Ashburn, J.
The questions in this case appear to range themselves in this order:
1. The maximum width of a county road when private lands are appropriated for that public use.
2. The effect when a county road is laid out more than sixty feet in width upon lands donated specially for that purpose.
3. The power of a reviewing court to modify the orders of county commissioners made in regard to the width of such road.
Numerous errors are assigned on the record in the court of common pleas. But two need be considered. They are:
“1. The said board erred in ordering, by its said order, that the report of said viewers and surveyor be confirmed, when the said viewers and surveyor laid out a considerable portion of said proposed road of greater width than sixty feet — that is, one hundred and twenty-seven poles of said road five poles wide* and a part of it four poles wide — ■ *335 whereas, by the laws of Ohio, no county road can be laid out more than sixty feet wide.
“ 2. The said board erred in ordering the lots and lands, and parts of lots, reported by said viewers and surveyor for that purpose, to be assessed -for the expense of constructing said road of said respective widths, some of which exceed sixty feet.”
Ten alleged errors are assigned in the district court. Three of them embrace the whole case, and are:
“1. The said court erred in affirming the said order of the board of county commissioners of July 14, 1870, because they had no authority or power to make the same.
“2. The said court erred in affirming the said orders and proceeding of said board of commissioners ordering the said road to be improved or constructed, when the same was as aforesaid unlawfully ordered to be laid out and established of said respective widths, some of which are more than sixty feet.
“3. The said board erred in ordering the lots and lands, and parts of lots, reported by said viewers and surveyor for that purpose, to be assessed for the expense of constructing said road of said respective widths, some of which exceed sixty feet.”
It is claimed by plaintiffs that the board of county commissioners have no legal power to lay out and establish a county road more than sixty feet wide, and to do so vitiates all the proceedings. On the other hand, defendants claim that under the act of May 9, 1868 (S. & S. 676), the. power of the board in that respect is limited only by their discretion.
The facts necessary to a consideration of this question, as we understand them, are as follows: The county commissioners of Eayette county, under the act of March 29, 1867, and the acts amendatory and supplementary thereto, had such proceedings and took such action that they made a final order establishing a county road,'beginning at the old corporation line in Market street, near the house of J. S. Beremanj in the village of Washington, and hence, by *336 course and distance noted, a distance of seven miles and seventy-eight rods to the Bloomingburgh pike. Erom the beginning point in Market street, for one hundred and twenty-seven poles, the road was laid out five poles (82f feet) wide; thence, two hundred and two poles, it was laid out four poles (66 feet) wide, and the residue fifty feet wide.
By an act passed April 7, 1865 (S. & S. 690), and still in force, it is provided:
“All county roads that shall -hereafter be laid out and established shall be not less than thirty nor more than sixty feet wide.”
And an act passed March 27,1867 (S. & S. 693), provides as follows:
“ Section 1. That the county commissioners of the several counties shall have power to increase or reduce the width of any of the county roads within their respective counties; and the township trustees of the several townships shall have power to increase or reduce the width of any of the township roads within their respective townships : provided, that no county or township road shall be widened beyond the maximum limit, or narrowed to less than the minimum limit fixed by law for such county or township roads.”
It seems clear, as language can make a subject-matter, that the maximum width of a county road is limited to sixty feet, and the minimum width fixed at thirty feet. And where public policy or necessity makes it proper to increase or diminish the width of an existing county road, it can not be widened beyond the maximum limit, nor narrowed to less than the minimum limit. This is the general policy of the law where private property is taken for this public use, and we find nothing in the act of May 9,1868 (¡3. & S. 675, 676), conferring on the county commissioners a discretionary power in excess of this limited power.
“We think error intervened in the proceedings of the board of county commissioners in ordering this road to be laid out and established more than sixty feet wide on that portion of the line of the road, where it was necessary to condemn private property for the toad-bed. The error* *337 however, in the respect we find it prejudicial to the rights of the plaintiffs, does not require a reversal of the whole case. Public policy and the law unite, in cases of this kind, in requiring an affirmance of the proceedings of the commissioners as to all persons not complaining, if the'error injuriously affecting the plaintiffs can be eliminated without destroying the whole. In this case, we think this can be done.
The provisions of the act of May 13, 1868, which is strictly remedial, and supplementary to the acts of March 29, 1867, and March 31, 1868 (S. & S. 677), are applicable to this case. It. provides: “That no person shall be permitted to take advantage of any error committed in any proceeding to lay out, construct, or improve any road under and by virtue of the act to which this is supplementary, or of the act entitled, ‘ an act to authorize the county commissioners to construct roads on petition of a majority of resident land-owners along and adjacent to the line of said roads,’ passed April 5, 1866, nor of any error committed by the county commissioners, ... or other person or persons, in the proceeding to lay out, construct, or improve any such road, nor of any informality, error, or defect appearing on the record of such proceeding, unless the party complaining is affected thereby. But the court in which any action is now pending, or may hereafter be brought, to enjoin, reverse, or declare void the proceedings by which any such road has been laid out, constructed, or improved, or ordered to be laid out, constructed, or improved, . . . may, if there be manifest error in such proceedings, affecting the rights of the plaintiff in such action, set the same aside as to him without affecting the rights or liabilities of the other parties in interest, and the court shall, on the final hearing, make such order in riie premises as may be equitable and just.”
It is claimed the record does not present a ease for the application of th'eprovisions of this act. Looking at the mischiefs which the statute was manifestly intended to ob *338 víate, and to the remedies, both legal and equitable, it provides, we think the legislature intended its “ equitable and just” principles to apply to just such a case as is presented in this record, and that, too, whether the proceedings are instituted to reverse, enjoin, or declare void. Under the provisions of this act, in connection with the provisions of section 514 of the code, the reviewing court can make such order in the premises in regard to the proceedings of the commissioners, which are of a judicial character, as will protect all the rights of the individual, and, at the same time, be careful to regard and protect all the legal and just interests of the public. To this end, the reviewing court may reverse, vacate, or modify any final order made by the board of commissioners. The power of molding and modifying the action and orders of the commissioners is submitted by the statute to the sound judicial discretion of the reviewing court.
One hundred and twenty-seven poles of this road, from 'the beginning point, was laid out and established five rods •wide. As we read the record, this portion of the road is 'in the village of Washington, and x-uns through a tract of "land, within the corporate limits of the village, owned by .J. S. Bei-eman, and known as “ Bex-eman’s pasture.” As .•the x’oad divides “Bereman’s pasture,” and would have to ‘be fenced, he demanded two hundred dollars damages, to 'build, as xve understand it, the necessary additional fences. 'The viewer’s reported that sum in his favor, and it was .allowed to him by the commissionei’s.
Bereman proposed to the commissioners if they would day out the road five poles wide, and allow him two hundred ’■dollars damages, the estimated cost of feixcing, he would donate, for the purposes of the x’oad, one hundred and twenty-seven poles in length by five poles wide through his land. This proposition was accepted by the commissioners.
The viewers iix their report say: “We further report ■that we laid out said road five poles wide from the beginming point for one hundred and twenty-seven poles (127 [poles); three poles out of said five poles in width to lie on *339 the north side of the continuation of the center of Market street, and two (2) poles on the south side of the continuation of the center of said Market street.” This action of the viewers was approved by- the commissioners. This 127 poles of roadway was donated to the public, alike for the use of plaintiffs as others.
The act of March 31, 1868, authorizes the commissioners to receive donations in money or property, real or personal, to be used in the construction or improvement of such roads. The commissioners are not directed as to the manner donations of this kind are to be used, and hence they must make the application as in their judgment seems best for the public. When more than sixty feet in width of land is donated to the public for a road, the commissioners may, we think, accept it in behalf of the public. Although a county road laid out more than sixty feet wide is not, in that respect, in strict conformity to law, if the cost and expense of the road are not increased thereby, we can not perceive what substantial right of the plaintiffs is prejudiced.
In the case under course of decision only thirty feet in width was used as a base of the improvement made on this roadway. It does not appear that this road has or will cost a dollar more to improve it or keep it in repair than if it had only been laid out just sixty feet wide.
As plaintiffs are not damaged by reason of Bereman’s donation, and we find there is error in the proceedings of the commissioners, we are to ascertain in what manner and to what exteut they have been prejudiced. We find it in this : Certain of the lands of plaintiffs were reported by the viewers to be assessed to pay the costs and expenses of constructing and improving the road. As a part of their final order in the premises, the commissioners made this order : “ And it is hereby further ordered by the board that the lands and lots, and parts of lots, reported by said viewers and surveyor shall be assessed for the construction of said road.”
Unless this final order is modified, the lands of plaintiffs will be required to bear a slightly larger proportion of the costs and expenses of the road and its improvements than *340 tlieir just proportion. The costs and damages imposed by the erroneous appropriation of a strip of land six feet in width and. 202 rods in length is the measure of the error committed by the commissioners. To the extent this erroneous action of the board has or will increase the assessment upon the lands of the plaintiff's, and thereby cause them to pay more than a lawful share of the costs and expenses of the road, will be the measure of plaintiffs’ injury. The proceedings and final order of the county commissioners must be so modified that they will be required to pay no part of the value of or damages allowed to the property-holders for this fraction of land erroneously appropriated for the road.
We are not able at this time to determine the exact amount of pecuniary injury plaintiff will sustain should the proceedings and final order of the commissioners remain unchanged, but it approaches so' near the margin of the maxim de minimis non curat lex, that justice requires us to order that the costs of these proceedings in error be paid as follows: One-half by the plaintiffs and one-half by the defendants.
The case is remanded to the court of common pleas for further proceedings, and with' an order for that court to modify its judgment of affirmance so as to exempt plaintiffs from liability to pay any portion of the damages (and costs, if any) arising from the erroneous appropriation to the width of the road, by the order of the county commisers, of six feet by two hundred and two rods of land.